IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JERMAINE DAVID RICHARDSON,<br><br>Defendant. | CR 18-110-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |

Defendant Jermaine David Richardson ("Richardson") is charged with being a felon in possession of a firearm. (Doc. 1.) On October 26, 2018, Richardson moved to suppress evidence obtained by police in a search of his residence. (Doc. 24.) U.S. District Court Judge Susan P. Watters referred Richardson's Motion to Suppress to the undersigned for purposes of conducting a hearing and issuing findings and recommendations. (Doc. 28.) On December 26, 2018, this Court recommended that Judge Watters grant Richardson's Motion to Suppress. (Doc. 40.)

The government objected to this Court's findings and recommendations, and argued the evidence should not be suppressed based on the independent source exception to the exclusionary rule. (Doc. 44.) The government did not previously

argue the application of the independent source exception. Therefore, Judge Watters referred the motion back to the undersigned to conduct an independent source exception analysis. (Doc. 47.)

Since this issue was not raised previously, the Court provided Richardson with an opportunity to respond to the government's argument. (Doc. 48.) On January 15, 2019, Richardson filed a response. (Doc. 49.) Having considered the parties' arguments and submissions, the Court **RECOMMENDS** that Richardson's Motion to Suppress be **DENIED**.

## I.    BACKGROUND

The Court has previously addressed the factual background in this matter. (*See* Doc. 40.) Only the facts relevant to the Court's independent source analysis are provided.

On November 21, 2018, the Court held an evidentiary hearing on Richardson's motion. The Court heard testimony from Billings Police Department Sergeant Riley Finnegan ("Sergeant Finnegan") and Detective Steve Hallam ("Detective Hallam"). The following facts are taken from the hearing testimony and the parties' briefing.

On June 21, 2018, Richardson was living in a trailer home in Billings, Montana. On that date, Billings Police Officer Kramer observed a suspected stolen vehicle outside of Richardson's residence. (Doc. 25 at 2, Doc. 35 at 2.) Officer

Kramer ran the vehicle's license plates, and learned the stolen vehicle was associated with a female juvenile who was reported missing. (Doc. 35 at 2.) Officer Kramer reported the stolen vehicle, and Sergeant Finnegan and Detective Hallam responded to the residence. (Tr. 6.) The officers knew Richardson lived in the trailer, and that he was currently being investigated by the Billings Police Department's Street Crimes Unit for possible narcotics and prostitution-related offenses. (Tr. 7, 27.)

Officer Kramer, Sergeant Finnegan, and Detective Hallam discussed the situation and decided to contact the occupants. (Tr. 10.) Officer Kramer and Sergeant Finnegan approached the front door of the trailer, while Detective Hallam positioned himself to watch the back door. (Tr. 10-11, 45.)

After Officer Kramer knocked on the front door, Richardson opened the door and Sergeant Finnegan smelled the odor of marijuana coming from inside the trailer. (Tr. 10.) Detective Hallam also testified that he smelled marijuana permeating from the back of the trailer. (Tr. 46.) Sergeant Finnegan did not see anyone else in the trailer at that time, but Richardson confirmed the missing female juvenile was inside and was going to come out. (Tr. 10-11.)

During Richardson's exchange with Sergeant Finnegan and Officer Kramer, Detective Hallam observed two males exit the back of the residence. (Tr. 46.) He noticed one of the individuals had a backpack. Detective Hallam yelled "stop,

3

police," but both individuals ran. *Id.* Detective Hallam chased the two individuals, eventually catching "A.M.," a juvenile. (Tr. 47.) Detective Hallam detained A.M. and walked him back to the trailer. (Tr. 47.) A.M. was known to the officers. (Tr. 51.) During a previous traffic stop, A.M. was a passenger in a vehicle where a large quantity of marijuana and a stolen firearm were located. (Tr. 8, 51.)

After turning A.M. over to other officers, Detective Hallam retraced the route he took to chase the two individuals, looking for anything that was dropped or discarded. *Id.* He found a backpack in a garbage can along the route, matching the backpack he saw in the possession of one of the fleeing individuals. (Tr. 48.) Detective Hallam testified the backpack was three-quarters unzipped, and he observed a medium-sized Mason jar containing a green leafy substance consistent with marijuana in plain view. *Id.* He confiscated the backpack and returned to the trailer. (Tr. 49.)

In the meantime, the missing juvenile female had exited the trailer, and Richardson had closed the front door. (Tr. 12.) Three additional officers also arrived on the scene. (Tr. 12.) The officers then gathered outside of the front of the residence to discuss their next course of action. (Tr. 28, 68.) Sergeant Finnegan ultimately decided to again contact the occupants to secure the residence pending a search warrant application. (Tr. 13.) He testified that he felt probable cause existed to apply for a search warrant, and he "wouldn't have secured the

residence pending a search warrant application . . . had I not had that information at that point in time." (Tr. 13.)

When the officers returned to the front door they instructed the occupants to exit Richardson's residence, and the officers handcuffed them as they did so. (Tr. 15.) After removing Richardson and the other occupants, Officer Kramer, Sergeant Finnegan, and Detective Hallam entered the residence to perform what they considered to be a "protective sweep." (Tr. 17, 34.) During the sweep, Detective Hallam observed a semi-automatic black handgun on the top shelf of a closet inside one of the bedrooms. (Tr. 55.) He did not seize the handgun; he finished the sweep, and exited the house. (Tr. 55, 57.)

Once the sweep concluded, Officer Kramer completed the search warrant application. (Tr. 19.) The application provided a factual basis supporting probable cause, which included the officers' observation of the handgun during the prior entry. (Doc. 44-1 at 3.) After obtaining a warrant, the officers searched the residence and seized the firearm and other suspected contraband. (Doc. 44-1 at 9.) Richardson was subsequently charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

## II. DISCUSSON

Warrantless searches and seizures of a residence are "presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (quoting *Payton v.*

*New York*, 445 U.S. 573, 586 (1980)). In the absence of an applicable warrant exception, "[t]he exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search," as well as derivative evidence "that is the product of the primary evidence, or is otherwise acquired as an indirect result of the unlawful search." *Murray v. U.S.*, 487 U.S. 533, 536-37 (1988) (citations omitted). Evidence subject to the exclusionary rule may nevertheless be admissible if it was also obtained through an "independent source." *Id.* at 537-538.

In situations where a lawful search pursuant to a warrant is preceded by an unlawful warrantless search, it must be established that the former is "a genuinely independent source of the information and tangible evidence" to be used. *Id.* at 542. Thus, for the independent source exception to apply in the circumstances presented here, it must be determined (1) whether the "agents' decision to seek the warrant was prompted by what they had seen during the initial entry," and (2) whether evidence seen or information obtained during the initial entry "was presented to the Magistrate and affected his decision to issue the warrant." *Id.* It is the function of the district court to make these factual findings. *Id.* at 543; *see also U.S. v. Heselius*, 671 Fed.Appx. 518, 519 (9th Cir. 2016) (government conceded remand was necessary for factual findings regarding the second prong of this analysis).

"The mere inclusion of tainted evidence in an affidavit does not, by itself, taint the warrant or the evidence seized pursuant to the warrant." *U.S. v. Lesueur*, 729 Fed.Appx. 591, 592 (9th Cir. 2018) (quoting *U.S. v. Vasey*, 834 F.2d 782, 788 (9th Cir. 1987)).  "Rather, '[a] reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant.'" *Id.*  The remaining affidavit may still demonstrate "probable cause if, under the totality of the circumstances, it reveals a fair probability that contraband or evidence of a crime will be found in a particular place." *Lesueur*, 729 Fed.Appx. at 592 (quoting *U.S. v. Celestine*, 324 F.3d 1095, 1102 (9th Cir. 2003)).

Under the facts presented and upon review of the search warrant application, the Court finds that evidence of the handgun was obtained through an independent source.  First, Sergeant Finnegan testified that he made the decision to seek a search warrant prior to making the initial entry into Richardson's trailer.  (Tr. 13.)  He explained the initial entry was intended to secure the residence until the search warrant was obtained.  (Tr. 13.)  Sergeant Finnegan also testified that he would not have made the decision to secure the residence pending a search warrant had he not believed probable cause existed to search Richardson's home.  (Tr. 13.)

Detective Hallam corroborated the timing of the decision to apply for a search warrant.  He testified that the officers discussed requesting a search warrant

based on the circumstances at hand, namely the prior criminal activity of the individuals associated with Richardson's residence, the fleeing individuals, the overwhelming smell of marijuana, and the marijuana found in the backpack of one of the occupants who fled the residence. (Tr. 50.) Detective Hallam explained that the discussion occurred before the officers preformed a sweep of Richardson's house, which was intended to secure the residence pending a search warrant. (Tr. 52.)

In *Murray v. U.S.*, the Supreme Court recognized that a search pursuant to a warrant cannot be an independent source if "the agents' decision to seek the warrant was prompted by what they had seen during the initial entry". 487 U.S. at 542. Here, the testimony establishes that Sergeant Finnegan's decision to seek a search warrant was not prompted by the officers' observation of the handgun during the initial entry. Therefore, unlike the facts in *Murray*, the testimony here shows "that the agents would have sought a warrant if they had not earlier entered the [residence]". *Id.* at 543. Additionally, in *Murray*, the Supreme Court suggested that because the "purpose of the warrantless entry was in part to guard against the destruction of possibly critical evidence," it could perhaps be inferred that "the agents who made the entry already planned to obtain that 'critical evidence' through a warrant-authorized search." *Id.* Nevertheless, such an

inference is not required here, since both Detective Hallam and Sergeant Finnegan testified they planned to obtain a search warrant prior to entering the residence.

The Court must next determine whether evidence seen or information obtained during the initial entry "was presented to the Magistrate and affected his decision to issue the warrant." *Id.* at 542. It is undisputed that the search warrant application included information about the handgun. (Doc. 44-1 at 3.) Therefore, the Court must excise any statement regarding the handgun from the warrant application, and determine whether the remaining evidence establishes probable cause to issue a warrant. *U.S. v. Vasey*, 834 F.2d 782, 788 (9th Cir. 1987).

The Court makes a probable cause determination by evaluating the totality of the circumstances and making a "practical, common-sense decision." *U.S. v. Chavez-Miranda*, 306 F.3d 973, at 978 (9th Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983). In making a probable cause determination, the judge issuing a search warrant "must find a 'reasonable nexus' between the contraband sought and the residence." *Chavez-Miranda*, 306 F.3d at 978 (citing *U.S. v. Rodriguez*, 869 F.2d 479, 484 (9th Cir. 1989)). The judge "need only find that it would be reasonable to seek the evidence there." *Chavez-Miranda*, 306 F.3d at 978 (citing *U.S. v. Terry*, 911 F.2d 272, 275 (9th Cir. 1990)). Further, "in narcotics cases 'evidence is likely to be found where the dealers live.'" *Chavez-Miranda*, 306 F.3d at 978 (quoting *U.S. v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir.

9

1986)).  Under federal law, the odor of marijuana alone may be sufficient to establish probable cause.  S*ee e.g., U.S. v. Kerr,* 876 F.2d 1440, 1445 (9th Cir. 1989) (finding the "presence of the odor of contraband may itself be sufficient to establish probable cause") (citing *Johnson v. U.S.*, 333 U.S. 10, 13 (1948)); and *U.S. v. Norment*, 13 Fed.Appx. 654, 656 (9th Cir. 2001) (finding probable cause to search a vehicle based on the odor of marijuana).  Under Montana law, "the odor of marijuana coupled with additional facts and circumstances may establish probable cause."  *State v. Kleinfield*, 213 P.3d 461, 466 (Mont. 2009).

     Here, excluding the tainted evidence, the search warrant application provides probable cause supporting the warrant's issuance.  The application includes the following details: (1) the officers were familiar with the residence and knew Richardson was a suspect in ongoing investigations involving drugs and prostitution; (2) upon approaching Richardson's residence and making contact with him, the officers detected an overwhelming odor of marijuana; (3) two of the occupants fled the residence from the back door; and (4) Detective Hallam chased the fleeing individuals, apprehending an individual known to the officers from a previous drug-related investigation in which a large amount of marijuana and a stolen firearm were recovered.  (Doc. 44-1.)

     The Court finds that, taken together, these facts support a finding of probable cause that contraband or evidence of a crime would be found in the

residence. Therefore, after excising the tainted facts submitted in the application for a search warrant, the application establishes probable cause to issue a warrant. Thus, the independent source exception to the exclusionary rule applies, and the evidence should not be suppressed.

## III. CONCLUSION

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that Richardson's Motion to Suppress (Doc. 24) be **DENIED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 12th day of February, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge